Filed 12/29/14  Adoption of R.C. CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| Adoption of R.C., a Minor. | |
| C.K. et al.,<br><br>    Plaintiffs and Respondents,<br><br>v.<br><br>A.T.,<br><br>    Defendant and Appellant. | A141582<br><br>(Alameda County<br>Super. Ct. No. RA13692590) |

**INTRODUCTION**

Defendant A.T. appeals from the order terminating his parental rights to the child that plaintiffs C.K. and J.B. seek to adopt, and allowing the adoption to go forward without his consent.  The trial court reinstated this order after reconsidering and rejecting its prior order by which it had set aside the default termination order (default order) pursuant to Code of Civil Procedure section 473, subdivision (b).[1]  The reinstatement ruling was based on the court's conclusion that Family Code section 7669[2] deprived it of jurisdiction to set aside the termination order.  However, because defendant was not served with notice of the proceeding in the manner required by statute, the court lacked personal jurisdiction over him at the time it originally entered the default order.

---

[1] Code of Civil Procedure section 473, subdivision (b), provides that a "court may, upon any terms as may be just, relieve a party . . . from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect. . . ."

[2] All further statutory references are to the Family Code except as otherwise indicated.

1

Concluding the default order is thereby void, we reverse reinstatement of the order terminating his parental rights.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs are a married couple living in Oakland. R.C., the child who is the subject of this adoption proceeding, was born in July 2013 in Murray, Utah. The birth mother is S.C. and the father is defendant.

The birth parents met in March 2012. They lived together from April 2012 to August 2012. They lived apart for a while and then moved in together again for a period of one month in December 2012. S.C. became pregnant and informed defendant that he was the father. He acknowledged paternity but reportedly did not offer to provide any financial assistance. At the time of R.C.'s birth, defendant was incarcerated.

A pre-placement homestudy prepared by a licensed social worker approved plaintiffs for adoption placement. Between July 6, 2013 and August 3, 2013, plaintiffs stayed in Utah to provide S.C. with daily emotional support and transportation to routine doctor appointments. Reportedly, defendant did not communicate with S.C. despite his awareness of her pregnancy and his status as the birth father. Plaintiffs' initial plan was to complete the adoption through a private adoption agency in Utah. However, they were informed shortly before R.C.'s birth that the agency could not make a placement with a same-sexed couple as this conflicted with Utah law, which at that time did not recognize same-sex marriages.

On July 23, 2013, defendant was personally served with a "Notice of Alleged Paternity" while incarcerated in a Utah jail. The notice was prepared by plaintiffs' then-counsel, and advised defendant that his failure to bring a paternity action within 30 days after the birth of the child or service of the notice, whichever occurred last, could result in the child's adoption and the termination of his parental rights. While the document is captioned under the heading "Superior Court of the State of California for the County of Alameda," the notice was not filed in the superior court and does not bear a case number.

2

On August 5, 2013, S.C. and plaintiffs executed an independent adoption placement agreement in Oakland, California.

On August 19, 2013, the attorney who prepared the July 23, 2013 notice received a copy of a handwritten note from defendant stating his objection to the adoption. The note is dated August 12, 2013, and is addressed to the Alameda County Superior Court.[3] In the note, defendant requested that the court appoint legal counsel for him, order paternity testing, and accept the letter as a "legal document of declaration of parentage [and] motion to dispense the current motion for adoption to be filed before this court." The attorney forwarded the note to plaintiffs' new counsel.

On August 20, 2013, this action commenced when plaintiffs filed a request for an independent non-relative adoption in the Superior Court of California, County of Alameda. Plaintiffs included a request that the court terminate defendant's parental rights.

On October 23, 2013, plaintiffs filed substitutions of themselves as attorneys in pro. per.

On October 31, 2013, plaintiffs filed a petition to dispense with notice and terminate defendant's parental rights as an alleged father. The petition included a copy of the August 12, 2013 letter from defendant. As there is no proof of service in the record, we may infer defendant was not served with this petition.

On November 8, 2013, the trial court filed its order denying the motion to dispense with notice and terminate defendant's parental rights.[4]

---

[3] The letter did not become a part of the trial court's file at the outset of this proceeding, presumably because it arrived before the instant action was commenced.

[4] We decline plaintiffs' request to exercise our discretion and to review this ruling under Code of Civil Procedure section 906, which states in pertinent part: "The respondent . . . may, without appealing from [the] judgment, request the reviewing court to and it may review any of the foregoing [described orders or rulings] for the purpose of determining whether or not the appellant was prejudiced by the error or errors upon which he relies for reversal or modification of the judgment from which the appeal is taken." In particular, we note the record is silent as to the reasons for the denial.

On December 19, 2013, plaintiffs filed a notice of hearing to determine whether defendant was R.C.'s natural father and if he objected to the adoption. The hearing was set for the following day at 9:30 a.m. Defendant had been personally served with this notice on November 25, 2013. The notice states, in part: "If you are the natural father and you object to the adoption, then the purpose of the hearing will also be to determine whether it is in the best interest of the child that you retain your parental rights, including the right to object to the adoption, or whether it is in the best interests of the child to be adopted without your consent, and that your parental rights be terminated." The notice advised defendant to seek the advice of an attorney. The notice also stated that if he failed to appear at the hearing, "any parental rights you may have as to the child will be terminated," citing to section 7664, subdivision (a).[5] The proof of service indicates the notice of hearing was not accompanied by a court-issued citation to appear. Nor was defendant served with the August 20 request for non-relative adoption.

On December 20, 2013, the matter was called for hearing at 10:15 a.m. The record does not contain a reporter's transcript. According to the trial court minutes, plaintiffs were present when the hearing was called but defendant had not appeared. There is no indication any appointed counsel was present on his behalf. The trial court signed the "Order Terminating Parental Rights." After the order was signed, the minutes indicate: "At 11:30 a.m. [defendant] is present in court. [He] explains that he travelled from Utah. On the Court's own motion the Order Terminating Parental Rights is HEREBY ORDERED SET ASIDE." Thereafter, the court appointed an attorney for defendant.

---

[5] Section 7664, subdivision (a) provides, in part: "If . . . the biological father is identified to the satisfaction of the court . . . notice of the proceeding shall be given in accordance with Section 7666. If any alleged biological father fails to appear or, if appearing, fails to claim parental rights, his parental rights with reference to the child shall be terminated."

On January 3, 2014, the Social Services Agency of Alameda County recommended the proposed adoption be granted, provided that the trial court terminated defendant's parental rights.

On January 17, 2014, plaintiffs filed an opposition to the appointment of legal counsel for defendant.[6]

On February 14, 2014, plaintiffs filed a motion to strike the order setting aside the order terminating defendant's parental rights. The motion asserted the set aside order was an abuse of discretion because under section 7669, subdivision (b),[7] the trial court lacked jurisdiction to set aside the termination order once it had been entered.

In an opposition filed on March 20, 2014, defendant's appointed counsel argued plaintiffs had failed to set forth legal authority permitting the relief requested within a motion to strike. She further asserted that if the motion was deemed a motion to reconsider, then it was untimely. She also brought a motion for continuance as her client was unavailable due to his incarceration for a probation violation.

At a hearing on March 21, 2014, the trial court entered an order reinstating the December 20, 2013 order terminating defendant's parental rights and striking the order setting aside that order. The court indicated it had relied on Code of Civil Procedure section 473 when it set aside the termination order. The court agreed with plaintiffs that it had acted without jurisdiction because section 7669 is a specific statute that takes precedence over the more general provisions in Code of Civil Procedure section 473, which would have otherwise authorized relief. The trial judge indicated his view that the set aside order had been "fair and it was in the interest of justice" because, while defendant was late coming to court, he had driven from Utah "and I think my actions

---

[6] Plaintiffs subsequently withdrew this motion.

[7] Section 7669, subdivision (b) provides: "After making the order [requiring or dispensing with an alleged father's consent], the court has no power to set aside, change, or modify that order." Because we resolve this matter on grounds unrelated to this statute, we deny defendant's request for judicial notice of its legislative history.

were designed to relieve him of his tardiness in view of a trip of over a thousand miles to get to court." Notwithstanding this circumstance, the court struck the set aside order and reinstated the order terminating defendant's parental rights. This appeal followed.

## DISCUSSION

### I. Uniform Parentage Act

The Uniform Parentage Act (UPA; § 7600 et seq.) provides the statutory framework for making parentage determinations in California, which in turn determines the procedures and findings necessary when a child is placed for adoption. California enacted the UPA in 1975, as former Civil Code sections 7000–7018. (Stats. 1975, ch. 1244, sec. 11.) At that time, California largely adopted the provisions of the Uniform Parentage Act of 1973, promulgated by the National Conference of Commissioners on Uniform State Laws. (Note *The Uniform Parentage Act: What It Will Mean For the Putative Father In California* (1976) 28 Hastings L.J. 191, 192, 205-206.) In 1992, California's UPA provisions were moved to the newly created Family Code, and re-enacted without substantive change at sections 7600–7670. (Stats. 1992, ch. 162, § 10.) The procedures for terminating the parental rights of a father who is not a presumed father when the child's mother consents to an adoption are contained in chapter five of the UPA. (§ 7600 et seq.)

### II. Status of Biological Fathers in Adoption Proceedings

The parental rights of an alleged or biological father depend on whether he is presumed to be the natural parent of the child under section 7611. (See § 7660 [consent of mother and presumed father required for adoption]; *Adoption of Arthur M.* (2007) 149 Cal.App.4th 704, 718.) To be a presumed father, a man must fall within one of several categories enumerated in section 7611. If he has neither legally married nor attempted to legally marry the child's natural mother (§ 7611, subds. (a)–(c)), he cannot become a presumed father unless he "receives the child into his . . . home and openly holds the child out as his . . . natural child." (§ 7611, subd. (d); *Francisco G. v. Superior Court*

6

(2001) 91 Cal.App.4th 586, 595-596.) An action to determine the existence of a parent-child relationship, and presumed-father status, may be brought under section 7630 by any man alleged to be or alleging himself to be the father. (*V.S. v. M.L.* (2013) 222 Cal.App.4th 730, 734-735.)

"Under California law, an unwed biological father has a right to withhold consent to adoption of a child only if he meets the definition of a 'presumed father.' " (*Adoption of A.S.* (2012) 212 Cal.App.4th 188, 202.) " 'If a man is the presumed father of a child, the child cannot be adopted without his consent [citation], unless the trial court finds, on statutorily specified grounds, that he is unfit. [Citation.] If, however, he is not a presumed father of a child, the child can be adopted without his consent, and his parental rights can be terminated, unless the court determines it is in the child's best interest for him to retain his parental rights. [Citation.]' " (*Adoption of H.R.* (2012) 205 Cal.App.4th 455, 465.)

### III. *The Trial Court Lacked Jurisdiction to Issue a Default Order Terminating Defendant's Parental Rights*

Defendant contends he did not receive proper notice of the proceedings as directed by section 7666 and Code of Civil Procedure section 410.50 because he was not served with a copy of the petition. He argues, because service was inadequate, the trial court did not obtain personal jurisdiction over him and could not terminate his parental rights. He asserts his August 12, 2013 letter addressed to the court was not a general appearance and therefore the court had no basis on which to exercise jurisdiction over him with regard to his child when it terminated his parental rights on December 20. He also asserts the notice of the December 20 hearing that he was served with did not constitute proper notice under the Code of Civil Procedure because the notice was not accompanied by a petition or a court-issued citation to appear.

The interest of a parent in the companionship, care, custody, and management of his children is a compelling one, ranked among the most basic of civil rights. Before

7

depriving a parent of this interest, the state must afford the parent adequate notice and an opportunity to be heard. (*Lassiter v. Department of Social Services* (1981) 452 U.S. 18, 37-39 (*Lassiter*); *Santosky v. Kramer* (1982) 455 U.S. 745, 753; *In re B.G.* (1974) 11 Cal.3d 679, 688-689.) However, the state may accord fewer constitutional rights to a natural (biological) father who has never established a relationship with his child than it accords the child's presumed father or a natural father who has demonstrated a full commitment to his parental responsibilities. (*Adoption of Kelsey S.* (1992) 1 Cal.4th 816, 823-825, 836-837, 849 (*Kelsey S.*), citing *Lehr v. Robertson* (1983) 463 U.S. 248, 256; cf. *Lassiter, supra,* at p. 37 ["due process allows for the adoption of different rules to address different situations or contexts"].) Here, whether defendant qualifies as a presumed father is an issue that has not yet been adjudicated. Regardless, even natural fathers are entitled a measure of due process.

The Legislature has enacted a statutory framework for family law adoption proceedings that establishes different notice requirements for mothers and presumed fathers, on the one hand, and natural fathers who are not presumed fathers and possible natural fathers, on the other. (§ 7666; see *Kelsey S., supra,* 1 Cal.4th at pp. 823-825 [mothers and presumed fathers have far greater rights].) This framework provides the natural father with an opportunity to appear and to assert his interests with respect to the child. (*Kelsey S., supra,* at p. 838; cf. *In re Karla C.* (2003) 113 Cal.App.4th 166, 179 [alleged biological father has limited rights, but is entitled to notice of dependency proceedings and an opportunity to appear and assert a position].) In California family law adoption proceedings, when a mother relinquishes for or consents to, or proposes to relinquish for or consent to, the adoption of a child who does not have a presumed father under section 7611, the court must cause an inquiry to be made into the identity of the child's natural father. (§§ 7662, subd. (a), 7663.) If the natural father is identified to the satisfaction of the court, or if more than one man is identified as a possible natural father,

each shall be given notice of the proceeding in accordance with section 7666. (§ 7666, subd. (a).)

When notice to an alleged or biological father is required under the UPA, it must be given "in accordance with the Code of Civil Procedure for the service of process in a civil action in this state at least 10 days before the date of the proceeding, except that publication or posting of the notice of the proceeding is not required. Proof of giving the notice shall be filed with the court before the petition is heard." (§ 7666, subd. (a).) The Code of Civil Procedure allows for service of a person outside California "in any manner provided by [article 3 of title 5, chapter 4 (article 3)] or by sending a copy of the summons and of the complaint to the person to be served by first-class mail, postage prepaid, requiring a return receipt." (Code Civ. Proc., § 415.40; see also Code Civ. Proc., § 413.10, subd. (b) [summons may be served on a person outside the state "as provided in this chapter or as prescribed by the law of the place where the person is served"].) Four methods of service are listed in article 3: personal delivery, substitute service, service by mail with acknowledgement of receipt, or service by publication. (Code of Civ. Proc., §§ 415.10, 415.20, 415.30, 415.50.)

With respect to personal service, "A summons may be served by personal delivery of a copy *of the summons and of the complaint* to the person to be served. Service of a summons in this manner is deemed complete at the time of such delivery." (Code Civ. Proc., § 415.10, italics added.) When the facts are not disputed, the effect or legal significance of those facts is a question of law, and the appellate court is free to draw its own conclusions, independent of the ruling by the trial court. (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799; *Community Youth Athletic Center v. City of National City* (2009) 170 Cal.App.4th 416, 427.)

As noted above, defendant was personally served with the July 23, 2013 notice of pending adoption and the notice of the December 20, 2013 hearing. The record on appeal indicates he was never served with a copy of the petition (the request for adoption) or a

summons as required by Code of Civil Procedure section 415.10. The trial court thereafter terminated his parental rights by default when he failed to appear on time for the hearing. "[C]ompliance with the statutory procedures for service of process is essential to establish personal jurisdiction. [Citation.] Thus, a default judgment entered against a defendant who was not served with a summons in the manner prescribed by statute is void." (*Dill v. Berquist Construction Co.* (1994) 24 Cal.App.4th 1426, 1444.) Because defendant was not properly served, the default termination order entered against him was void at the time it was made. Therefore, the court did not have the authority to reinstate the order after it revoked the order setting aside the termination order.

## IV. Defendant Did Not Generally Appear Prior to His Default

Plaintiffs contend the trial court had jurisdiction because defendant had already made a general appearance. Defendant argues the August 2013 letter he mailed to the court in response to the notice he received on July 23, 2013 from plaintiffs' then-attorney did not constitute a general appearance because the instant proceeding had not yet been filed. We agree with defendant.

Defective service is not fatal to personal jurisdiction if the defendant consents to jurisdiction over him or her by making a general appearance in the action. (See *In re Jennifer O.* (2010) 184 Cal.App.4th 539, 548 [a " 'general appearance by a party is equivalent to personal service of summons on such party' "]; *Fireman's Fund Ins. Co. v. Sparks Construction, Inc.* (2004) 114 Cal.App.4th 1135, 1145 [a " 'general appearance operates as a consent to jurisdiction of the person, dispensing with the requirement of service of process, and curing defects in service' "]; accord, *Dial 800 v. Fesbinder* (2004) 118 Cal.App.4th 32, 52.) A general appearance occurs when the defendant takes part in the action and " 'in some manner recognizes the authority of the court to proceed.' " (*Hamilton v. Asbestos Corp.* (2000) 22 Cal.4th 1127, 1147; see *Greener v. Workers' Comp. Appeals Bd.* (1993) 6 Cal.4th 1028, 1037 [if moving party "seeks relief on any basis other than lack of personal jurisdiction, he or she makes a general appearance"];

10

accord, *Mt. Holyoke Homes, LP v. California Coastal Com.* (2008) 167 Cal.App.4th 830, 844 [general appearance occurs when party, either directly or through counsel, participates in action in some manner that recognizes authority of the court to proceed].)

The instant action was commenced on August 20, 2013, when plaintiffs filed their request for adoption in the trial court. The notification of a pending adoption proceeding prepared by plaintiffs' counsel was served on him on July 23, 2013, *before* this action was filed. His responsive letter was also mailed before this action was filed.[8] The letter itself was not made a part of the record until *plaintiffs* later attached it *as an exhibit* to their ex parte October 31, 2013 motion to dispense with notice. Thus, the defendant did nothing to affirmatively avail himself of the court's jurisdiction or otherwise consent to jurisdiction prior to the issuance of the order terminating his parental rights. The court could not have acquired personal jurisdiction over him based on his response to the July 23, 2013 notice as there was no proceeding before it when that document was served.[9]

Defendant also contends he was not validly served with process on November 25, 2013 because he was served with a notice of hearing unaccompanied by any petition or court-issued citation to appear. Plaintiffs counter that he forfeited the right to raise these objections because he did not raise them below. They also assert he is now estopped from raising any personal jurisdiction argument because he waived the defense when he

---

[8] We observe that, while the letter indicates that it was mailed to the superior court, the letter in the record on appeal is a copy of the copy received by plaintiffs' former attorney. It does not bear a stamp showing that it was received by the court.

[9] The fact that a defendant has generally appeared in *this* court does not retroactively cure the defects in service. (*Bank of America Nat. Trust& Savings Assn. v. Carr* (1956) 138 Cal.App.2d 727, 735.) The effect of the general appearance in this court is that, on remand, the trial court will have personal jurisdiction over defendant without further service being required. (*Id.* at p. 739.) However, defendant's general appearance here does not impact the merits of his argument that he is entitled to a new hearing on termination of his parental rights because he was improperly served; it simply means that if we conclude service was in fact improper, the court will have personal jurisdiction over him to conduct a new hearing on plaintiffs' motion.

gave express and implied consent to the court's jurisdiction by accepting the order setting aside the default termination order and accepting appointment of counsel for him.

We observe defendant would have had no reason to raise the issue of personal jurisdiction on December 20, 2013 because the trial court, on its own motion, immediately decided to set aside the default order. There is also nothing in the record indicating that he requested appointed counsel when he appeared in court. In fact, the record does not contain an order appointing counsel for him. Thus, we have no way of determining if he did request counsel or if the trial court appointed counsel for him on its own motion. Again, a general appearance by a party will generally cure any defect in service and forfeits any objection based on a lack of personal jurisdiction. (*In re Marriage of Torres* (1998) 62 Cal.App.4th 1367, 1381 (*Torres*).) However, in the present case the default order terminating defendant's parental rights was issued *before* he arrived at the hearing and *before* counsel was appointed for him. (See Code Civ. Proc., § 410.50, subd. (b) [once jurisdiction is obtained, "[it] continues throughout *subsequent* proceedings in the action." (Italics added.)]; see also *In re Marriage of Smith* (1982) 135 Cal.App.3d 543, 546 [defendant who was defectively served with summons did not make that service retroactively valid by entering a general appearance after default judgment was entered].)

Plaintiffs also claim the court had the power to rule on their motion under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) (§ 3400 et seq.; formerly, Uniform Child Custody Jurisdiction Act (UCCJA)). The UCCJEA is the exclusive method of determining the proper forum for custody disputes involving other jurisdictions. (*In re Angel L.* (2008) 159 Cal.App.4th 1127, 1136 (*Angel L.*).) It applies to any "child custody proceeding," which it defines to include a "proceeding for . . . termination of parental rights." (§ 3402, subd. (d); see *Angel L., supra,* 159 Cal.App.4th at p. 1136.)

12

While the UCCJEA arguably afforded the trial court subject matter jurisdiction over R.C.,[10] proper notice to defendant was still required to comport with standards of due process: "The requirements of due process of law are met in a child custody proceeding when, in a court having subject matter jurisdiction over the dispute, *the out-of-state parent is given notice* and an opportunity to be heard.  Personal jurisdiction over the parents is not required to make a binding custody determination, and a custody decision made *in conformity with due process requirements* is entitled to recognition by other states . . . ." (*Torres, supra,* 62 Cal.App.4th 1367 at p. 1378, italics added.)  The act itself states: "Notice required for the exercise of jurisdiction [under the UCCJEA] when a person is outside this state *must be given in a manner prescribed by the law of this state for service of process* or by the law of the state in which service is made." (§ 3408, subd. (a), italics added.)  As we have already explained, defendant was not properly served with notice of the proceedings.

Although the notice of the December 20, 2013 hearing was personally served, this service could not overcome the failure to serve a copy of the underlying petition (the adoption request) as required by statute.  Knowledge by a defendant of a plaintiff's action does not satisfy the requirement of adequate service of a summons and complaint. (*Waller v. Weston* (1899) 125 Cal. 201, 203; *Honda Motor Co. v. Superior Court* (1992) 10 Cal.App.4th 1043, 1048; *Kappel v. Bartlett* (1988) 200 Cal.App.3d 1457, 1466-1467.) "[N]o California appellate court has gone so far as to uphold a service of process solely

[10] Under the UCCJEA, "Except as otherwise provided in Section 3424 [temporary emergency jurisdiction], a court of this state has jurisdiction to make an initial child custody determination only if any of the following are true: [¶] (1) This state is the home state of the child on the date of the commencement of the proceeding . . . . [¶] (2) A court of another state does not have jurisdiction under paragraph (1) . . . ." (§ 3421, subd. (a).) With respect to a child such as the minor who is under six months of age when the proceeding was commenced, "home state" is defined as "the state in which a child lived [from birth] with a parent or a person acting as a parent . . . ." (§ 3402, subd. (g).) Because the minor had not lived with a parent in any one state since his birth, he did not have a home state under the UCCJEA and California could exercise jurisdiction under section 3421, subdivision (a)(2).

on the ground the defendant received actual notice when there has been a complete failure to comply with the statutory requirements for service." (*Summers v. McClanahan* (2006) 140 Cal.App.4th 403, 414; see *In re Claudia S.* (2005) 131 Cal.App.4th 236, 247 [court obtains personal jurisdiction over a parent when the individual is properly noticed].)

## V. Conclusion

We conclude defendant did not receive notice of this adoption proceeding as required by section 7666 and the applicable provisions of the Code of Civil Procedure prior to the issuance of the default order terminating his parental rights. Because we resolve this case on statutory grounds, we do not reach the remaining constitutional issues raised in this appeal. (*Santa Clara County Local Transportation Authority v. Guardino* (1995) 11 Cal.4th 220, 230-231.) Nor need we address defendant's alternative statutory arguments. While the trial court indicated that it set aside the termination order based on Code of Civil Procedure section 473, the termination order is void in any event for failure to effect proper service. In striking the set aside order, the court ordered the reinstatement of the December 20, 2013 order. Because that order is void, it cannot be reinstated.[11] Accordingly, we reverse that reinstatement.

## DISPOSITION

The March 21, 2014 order striking the order setting aside the termination of defendant's parental rights and reinstating the order issued on December 20, 2013 is reversed.

---

[11] (See *County of San Diego v. Gorham* (2010) 186 Cal.App.4th 1215, 1229 ["where it is shown that there has been a complete failure of service of process upon a defendant, he generally has no duty to take affirmative action to preserve his right to challenge the judgment or order even if he later obtains actual knowledge of it because '[w]hat is initially void is ever void and life may not be breathed into it by lapse of time.' [Citation.]"].)

_____

Dondero, J.

We concur:

_____

Margulies, Acting P.J.

_____

Banke, J.